| | |
|---|---|
| STATIC CONTROL COMPONENTS, INC., | Pending in the United States District Court Eastern District of Kentucky Honorable Gregory F. Van Tatenhove Civil Action 04-CV-84-GFVT. |
|     PLAINTIFF/COUNTERCLAIM DEFENDANT | |
| v. | |
| LEXMARK INTERNATIONAL, INC., | |
|     DEFENDANT/COUNTERCLAIM PLAINTIFF | |
| v. | |
| WAZANA BROTHERS INTERNATIONAL, INC. d/b/a MICRO SOLUTIONS ENTERPRISES | |
|     COUNTERCLAIM DEFENDANT | |
| v. | |
| STATIC CONTROL COMPANIES, INC. | |
|     COUNTERCLAIM DEFENDANT | |
| v. | |
| NER DATA PRODUCTS, INC. | |
|     COUNTERCLAIM DEFENDANT | |

## MOTION TO QUASH IMPROPER SUBPOENA
## SERVED ON OPPOSING PARTY'S TRIAL COUNSEL
## (INCLUDING MOTIONS TO FILE TWO EXHIBITS UNDER SEAL)

Pursuant to Fed. R. Civ. P. 45(c), the law firm of Bartlit Beck Herman Palenchar & Scott

LLP ("Bartlit Beck") moves this Court to quash the October 18, 2006 subpoena that was served

on Bartlit Beck by attorneys for Lexmark International, Inc. ("Lexmark).

The subpoena seeks deposition testimony and documents from Bartlit Beck related to its work as *trial counsel* for Static Control Components, Inc. ("Static Control"), a party that is suing Lexmark, and being sued by Lexmark, in the United States District Court for the Eastern District of Kentucky. The subpoena is part of an unabashed attempt by Lexmark to discover the trial strategy and attorney work product of *all* of its opposing parties' trial counsel, apparently based on an unfounded theory that all of those parties waived their privileges when one of them *(not Bartlit Beck's client, Static Control)* asserted an "advice of counsel" defense based on an opinion letter that it procured years before the litigation commenced from a law firm that has never participated in the litigation.

Under Rule 45(c), the subpoena must be quashed, and Static Control should be awarded its legal fees.[1]

## BACKGROUND

### A. Nature Of The Underlying Litigation

Bartlit Beck brings this motion in this Court because Lexmark issued its subpoena on behalf of this Court. *See* Fed. R. Civ. P. 45(c)(1). The underlying litigation is pending in the United States District Court for the Eastern District of Kentucky, before the Honorable Gregory F. Van Tatenhove. It is the consolidation of two actions that have been pending, respectively, since 2002 and 2004. One of the actions was the subject of the Sixth Circuit's opinion in

---

[1] Pursuant to D.C.COLO.LCivR 7.1(A), the undersigned counsel states that before filing this motion he conferred with Lexmark's counsel in a good-faith effort to resolve the matter, but was unable to reach agreement with Lexmark's counsel. Lexmark extended the subpoena's document production date to October 31, 2006, during this effort to resolve the issue.

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004) (vacating preliminary injunction and remanding for further proceedings).[2]

The actions concern certain laser printer toner cartridges manufactured by Lexmark. Lexmark makes and sells laser printers and then attempts to "license" toner cartridges for those printers by means that include affixing fine-print labels to the cartridges in an effort to declare unilaterally that anyone who opens the cartridge box or uses the cartridge is a patent licensee of Lexmark, bound by the label "license" to use the cartridge only once and then return it to Lexmark. The object of this scheme is to prevent used cartridges from falling into the hands of companies known as "remanufacturers," which recycle used cartridges by repairing them and refilling them with toner so that they can be used again – at a price far below that of buying a new Lexmark cartridge. There are thousands of such remanufacturers in the United States.

Lexmark's adversaries in these actions are three specific remanufacturers – Pendl Companies, Inc. ("Pendl"); NER Data Products, Inc.; and Wazana Brothers International, Inc. (collectively, the "Remanufacturers") – along with the industry's largest supplier of parts to such remanufacturers, Static Control. Bartlit Beck represents only Static Control.

In broad terms, Static Control and the Remanufacturers contend that Lexmark's "licensing" scheme entails false advertising, constitutes patent misuse and is otherwise improperly anti-competitive, while Lexmark contends that Static Control and the

---

[2] Bartlit Beck does not wish to burden the Court with an exhaustive collection of exhibits supporting this general background information. Bartlit Beck therefore submits as general support for this summary of the nature of the case Static Control's February 24, 2004 Complaint for Declaratory Judgment (attached as Exh. 1) and Lexmark's November 8, 2004 Second Amended Answer and Counterclaims (attached as Exh. 2). *See also Lexmark v. Static Control, supra.*

Remanufacturers are willfully infringing Lexmark's patents, and/or willfully inducing the infringement of Lexmark's patents, by enabling consumers to re-use toner cartridges that Lexmark alleges were licensed to those consumers for only one use.

**B.      Bartlit Beck's Role As Trial Counsel To Static Control**

About July 2005, after years of this litigation had already passed, but as trial of the action became significantly more likely, Static Control retained Bartlit Beck as trial counsel. (*See* affidavit of Joseph C. Smith, Jr., attached as Exh. 3, at ¶ 4.)  Bartlit Beck was retained solely as trial counsel and not to offer any opinions as to the validity or infringement of any patent. (*Id.*) Bartlit Beck was not retained by any other party to the litigation. (*Id.* at ¶ 5.)

As trial counsel for Static Control, Bartlit Beck has not provided any party to this litigation, including Static Control, with any opinion as to the validity or infringement of any patent. (*Id.* at ¶ 6.)  Nor has Bartlit Beck provided any legal services whatsoever to any party other than Static Control. (*Id.*)

Bartlit Beck has participated with other counsel for Static Control and counsel for all of the Remanufacturers in privileged communications concerning matters of common interest to their preparation for trial, pursuant to a common interest agreement.  The common interest agreement does not contemplate the provision of, nor has it been used to provide, any party with any opinions as to the validity or infringement of any patent. (*Id.* at ¶ 7.)

**C.      Pendl's Disclosure Of The 1999 Opinion of Attorney Robert Becker**

On October 13, 2006, Pendl – of its own volition and without requesting or receiving any legal advice from Bartlit Beck – disclosed to Lexmark a written opinion of counsel that it apparently procured in 1999, years before any of this litigation began. (*See* Opinion Letter,

attached as Exh. 4.)[3]  While Bartlit Beck has never discussed this opinion letter with Pendl, it is clearly by its nature an opinion that would support an "advice of counsel" defense to willful patent infringement.  *See generally, e.g., Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996) (whether infringer acted willfully is a question of fact that rests on determination of infringer's state of mind; infringer's good faith reliance on competent advice of counsel constitutes defense to willfulness).

The opinion letter was written by an attorney named Robert Becker, who in 1999 was apparently with the law firm of Coudert Brothers.  (*See* Exh. 4.)  To the best of Bartlit Beck's knowledge, neither Mr. Becker nor Coudert Brothers has played any role in this litigation. (Exh. 3 at ¶ 8.)  Bartlit Beck has never had any communications with Mr. Becker or Coudert Brothers concerning Pendl or this litigation.  (*Id*.)  Nor was Bartlit Beck even aware of the Becker/Coudert opinion letter before Pendl disclosed it on October 13, 2006.  (*Id*.)

### D.      Lexmark's Subpoena to Bartlit Beck

On October 18, 2006, Lexmark issued its subpoena to Bartlit Beck.  (*See* Subpoena, attached as Exh. 6.)[4]  Lexmark did so despite knowing that Bartlit Beck is trial counsel to Static Control, and despite having no reason to believe Bartlit Beck had anything to do with the Becker/Coudert opinion letter that Pendl disclosed on October 13.  Lexmark's subpoena to

---

[3]  Pursuant to D.C.COLO.LCivR 7.2, Bartlit Beck moves for leave to file Exhibit 4 under seal. The exhibit has been designated by Pendl as "outside counsel only" under the protective orders entered in the underlying litigation (attached collectively as Exh. 5).  Bartlit Beck is therefore obligated to ask this Court to accept this portion of its filing under seal.

[4]  Pursuant to D.C.COLO.LCivR 7.2, Bartlit Beck moves for leave to file Exhibit 6 under seal because it also includes the Becker/Coudert letter designated by Pendl as "outside counsel only" under the protective orders entered in the underlying litigation (Exh. 5).  As with Exhibit 4 containing the same letter, Bartlit Beck is therefore obligated to ask this Court to accept this portion of its filing under seal.

Bartlit Beck is just one of a barrage of subpoenas that Lexmark issued the same day to trial

counsel for all of its adversaries in the underlying litigation, all premised on Pendl's disclosure of

the 1999 Becker/Coudert letter.  (*See* October 18, 2006 Email from Lexmark Counsel

M. Krashin, attached as Exh. 7.)[5]

Lexmark's subpoena to Bartlit Beck broadly demands "[a]ll documents and things

relating to the subject matter discussed in" the Becker/Coudert letter.  (Exh. 6 at Request 1; *see

also* Deposition Topic 1.)  That letter mentions (a) the patent laws of the United States; (b) the

contract laws of the United States; (c) Pendl's repair of Lexmark cartridges; (d) the sale by Pendl

of repaired Lexmark cartridges; (e) the exhaustion of any Lexmark patent rights in the cartridges;

(d) Lexmark's anti-competitive behavior; and (e) Lexmark's pricing schemes.  *See id*.  Given the

breadth with which Lexmark is thus likely to interpret the "subject matter" of the Becker/Coudert

letter, this request and the corresponding deposition topic seem intended to demand all privileged

communication between Bartlit Beck and Static Control, and all privileged work product

generated by Bartlit Beck during this litigation.

The subpoena goes on to demand various communications "between Bartlit Beck and

Pendl" related to virtually every issue in the litigation (*see id.*, Requests 2-9 and Deposition

Topics 2-9) – the catch being that "Pendl" is defined to include Pendl's attorneys (*see id.*,

---

[5]  There is a separate issue of privilege waiver pending before the Eastern District of Kentucky, concerning whether *Static Control* waived its own privileges as to certain matters by circulating, in 1997, a letter written by a law professor who was retained by Static Control as an independent expert (not as counsel).  The Magistrate Judge in Kentucky has made his ruling on this issue, but Judge Van Tatenhove has not yet decided whether to accept it.  As noted above, Lexmark's subpoena to Bartlit Beck is specific to the alleged Pendl waiver, and was transmitted with a cover email indicating that its purpose was specific to the alleged Pendl waiver.  (*See* Exhs. 6 and 7.)  Bartlit Beck mentions the other pending privilege issue merely to avoid any accusation by Lexmark that it should have been mentioned despite its irrelevance to the instant motion.

Definition 3), and as mentioned above, there have been numerous common-interest-privileged communications between Bartlit Beck and litigation counsel for all the Remanufacturers, including litigation counsel for Pendl.[6] Given the breadth of topics specified by the subpoena, it thus seems designed to call for most if not all common-interest-privileged communications that have taken place over the course of the entire litigation.

## ARGUMENT

## I. The Subpoena Must Be Quashed Because It Seeks Information Protected By The Attorney-Client Privilege And Work-Product Doctrine.

Rule 45 provides that a Court *must* quash or modify a subpoena that requires disclosure of privileged or other protected material. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii). This protection applies to subpoenas for production of documents as well as the testimony of witnesses. *Id*. A client may seek this protection when its attorney is subpoenaed, and the attorney may independently seek it in favor of his client. *See Estate of Yaron Ungar v. Palestinian Authority*, 400 F. Supp.2d 541, 554 (S.D.N.Y. 2005) (finding subpoena on counsel's documents required a court to "quash, rather than modify, the subpoena under Rule 45(c)"). Bartlit Beck seeks this protection as to each request and deposition topic in Lexmark's subpoena.

As noted above, Lexmark's document requests and deposition topics effectively demand that Bartlit Beck – in its role as trial counsel to one of Lexmark's adversaries – divulge privileged communications and work product. The requests are not tailored for discovery of non-privileged information; indeed they specifically seek privileged information related to each and every claim asserted in the litigation.

---

[6] There have been no communications between Bartlit Beck and Pendl Companies, Inc. (Exh. 3 at ¶ 9.)

Lexmark's tactic is unacceptable for two independent reasons.  First, Lexmark is wrong to believe that Pendl's assertion of its advice of counsel defense waived even its own privilege over communications with its own trial counsel or work product generated by its own trial counsel.  Waiver created by the advice of counsel defense does not extend to litigation documents created in anticipation of, or for use at, trial.  *See Intex Recreation Corp. v. Metalast*, Civ. No. 01-1213 (JDB), 2005 U.S. Dist. LEXIS 10149, at *10 (D.D.C. March 2, 2005).  In fact, many courts hold that the waiver applies only to communications and documents created before the filing of a lawsuit; communications and documents created thereafter retain their privilege. *See Dunhall Pharms. v. Discus Dental*, 994 F. Supp. 1202, 1206 (C.D. Cal. 1998) ("Once the lawsuit is filed, the waiver of work product protection ends."); *Motorola v. Vosi Techs*., 2002 U.S. Dist. LEXIS 15655 at *2 (N.D. Ill. 2002).  Such a limitation "follows the enhanced interest" in protecting a party against wholesale "disclosure of trial strategy and planning."  *Dunhill*, 994 F. Supp. at 1206.

Some courts find that the waiver extends beyond the filing of the lawsuit.  These courts nevertheless limit post-filing discovery to *non-litigation counsel*.  They continue to protect litigation counsel and apply the privilege to their advice.  *See Tivo v. Echostar*, Civ. No. 2:04-CV-1, 2005 U.S. Dist. LEXIS 42481, at **18-19 (E.D. Tex. Sept. 26, 2005) (denying discovery into opinions by litigation counsel).  Even courts applying the most liberal and expansive form of waiver still protect litigation files, limiting any production to litigation counsel opinions that contradict the client's previous patent opinions.  *See Intex*, 2005 U.S. Dist. LEXIS at *15.  All of these interpretations stand for the general premise that regardless of a court's interpretation of waiver, a party cannot – under the guise of discovery pursuant to an advice of counsel defense –

"pillage" its opponent's litigation files.  *In re Echostar*, 448 F.3d 1294, 78 USPQ2d 1676, at

1682 (Fed. Cir. 1996).  That is precisely and transparently what Lexmark is trying to do.

Second, Lexmark is also wrong to believe that the alleged waiver by Pendl would extend

to the other Remanufacturers or Static Control because of the common interest agreement that

those parties entered into exclusively for trial preparation purposes, years after Pendl received

the 1999 legal opinion that it recently disclosed.  Indeed, Lexmark has it completely backwards:

the existence of the common interest agreement *prohibits* one party's disclosure from waiving

any other party's privilege.  *See, e.g., In re Blinder, Robinson & Co., Inc.*, 140 B.R. 790, 795 (D.

Colo. 1992) (joint defense privilege cannot be waived without consent of all parties who share

privilege); *Metro Wastewater Reclamation Dist. v. Continental Cas. Co.*, 142 F.R.D. 471, 478

(D. Colo. 1992) (same).  *See also generally, e.g., John Morrell & Co. v. Local Union 304A of*

*United Food and Commercial Workers*, *AFL-CIO*, 913 F.2d 544, 555-56 (8th Cir. 1990) (it is

fundamental that joint defense privilege cannot be waived without consent of all parties to the

defense) (citing cases); *In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d

244 (4th Cir. 1990) (one participant in common interest privilege cannot unilaterally waive

privilege without consent of other participants in the privilege); *In re Benun*, 339 B.R. 115,

128-29 (Bkrtcy. D. N.J. 2006) (when one of two or more clients with common interests waives

his attorney-client privilege in dispute with third party, that one client's waiver of privilege does

not effect a waiver as to other clients' attorney-client privilege) (citing, *inter alia, Interfaith*

*Housing Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1402 (D. Del. 1994)).

Static Control has not consented to any waiver of the common interest privilege that

exists among itself and the Remanufacturers.  Thus, even if Pendl waived its own privileges with

respect to certain materials of its own, related to the 1999 opinion letter it received from

non-litigation counsel before litigation commenced, that limited waiver cannot be construed to

waive any privilege that belongs to Static Control, including the common interest privilege that

Static Control shares with all the Remanufacturers.

The Court should therefore quash Lexmark's subpoena to Bartlit Beck.

## II.     The Subpoena Should Be Quashed Because There Is No Justification For Lexmark To Depose Opposing Trial Counsel.

Depositions of opposing counsel are disfavored. *RESQNET.com v. Lansa, Inc.*, 59 Fed.

R. Serv. 3d (Callaghan) 122, 2004 U.S. Dist. LEXIS 13579, at * 5 (S.D.N.Y. July 23, 2004)

(quoting *United States v. Yonkers Bd. Of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991)).  Even "a

deposition of counsel limited to relevant and non-privileged information risks disrupting the

attorney-client relationship and impeding the litigation." *Id.* (citing *Alcorn Labs v. Pharmacia

Corp.*, 225 F. Supp.2d 340 (S.D.N.Y. 2002)).  Taking the deposition of opposing counsel not

only "lowers the standards of the profession" but also "detracts from the quality of client

representation." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987).

Counsel should instead be free to devote his or her time and efforts to preparing the client's case

"without fear of being interrogated by his or her opponent." *Id*.

The Tenth Circuit has used the strict test announced by the Eight Circuit in *Shelton*.  *See

Boughton v. Cotter*, 65 F.3d 823, 829-32 (10th Cir. 1995).  The *Shelton* test first states that

opposing counsel cannot be deposed if the information being sought is privileged. *Id*.  Where the

information sought is non-privileged, opposing counsel may still not be deposed unless (1) "no

other means exists to obtain the information" and (2) "the information is crucial to the

preparation of the case." *Id*. (citing *Shelton*, 805 F.2d at 1327).

Lexmark cannot meet any of these prerequisites. First, the information sought is privileged, as Static Control has not waived any privilege. *See* I, *supra.* Second, there is certainly another means by which to discover any non-privileged information: Lexmark can simply depose Pendl. Discovering any such information from an alternate source is therefore not only possible, but convenient, as Pendl is a party whose deposition can easily be noticed. Third, Lexmark has not and cannot show that deposing Bartlit Beck is "crucial" to its case. Discovering Static Control's privileged trial strategy is not appropriate, much less "crucial."

**III.    The Subpoena Should Be Quashed Because It Does Not Provide A Sufficient Response Time, Is Overly Broad And Unduly Burdensome, And Seeks Duplicative Documents.**

The subpoena should also be quashed because of other deficiencies. First, it allowed insufficient time for what would be tremendously burdensome document production. (Exh. 6 at 2.) Under Rule 45(c), there must be a reasonable time for compliance. *See* Fed. R. Civ. P. 45(c)(3)(i).

Second, the subpoena is overly broad and unduly burdensome. For instance, it requests all documents and testimony "relating to" the "subject matter" of the 1999 Becker/Coudert letter. This request is breathtakingly vague, susceptible to being interpreted to include all statutes and case law, as well as every document ever written on patent infringement. As such the subpoena is overly burdensome and should be quashed. *See* Fed. R. Civ. P. 45(c)(3)(A)(iv) (quashing subpoena for undue burden).

Finally, the subpoena seeks duplicative documents already sought from the appropriate party – Pendl. Allowing an opposing litigant to serve discovery on a party and then subpoena another party's trial counsel for the same documents is wasteful and harassing.

For all these reasons enumerated under Rule 45(c), the subpoena should be quashed.

## IV.     Static Control Should Be Awarded Attorney Fees.

A party and its attorney issuing and serving a subpoena "shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c).  Moreover, the "court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee." *Id*.

Any serious consideration of the attorney-client and common interest privileges would have put Lexmark on notice that its document requests and deposition topics were impermissible. *See* I, *supra*.  Furthermore, any serious consideration of the Tenth Circuit's prerequisites for deposing litigation counsel would have put Lexmark on notice of the impropriety of its subpoena.  *See* II, *supra*.  Finally, regardless of whether Lexmark may believe it has grounds on which to seek certain documents from Pendl because of a specific waiver, it is undeniable that Lexmark has sought documents and testimony far exceeding that scope, and improperly sought them from another party's trial counsel.  Given Lexmark's unnecessarily harassing and careless approach, Static Control should be awarded the attorneys' fees incurred in responding to the subpoena.

## <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should quash Lexmark's subpoena to Bartlit Beck, and Static Control should be awarded its reasonable attorney's fees for Bartlit Beck's response to the subpoena.

Dated: October 30, 2006.                    Respectfully submitted,


//Joseph C. Smith, Jr.
Joseph C. Smith, Jr.
Alison G. Wheeler
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
1899 Wynkoop Street, 8th Floor
Denver, CO  80202
Telephone:      (303) 592-3100
Facsimile:      (303) 592-3140

# CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of **MOTION TO QUASH IMPROPER SUBPOENA SERVED ON OPPOSING PARTY'S TRIAL COUNSEL (INCLUDING MOTIONS TO FILE TWO EXHIBITS UNDER SEAL)** were served this 30th day of October, 2006, to the following:

## BY EMAIL:

Charles F. Shivel, Jr.
(charles.shivel@skofirm.com)
Steven B. Loy (steven.loy@skofirm.com)
Hanly A. Ingram (hanley.ingram@skofirm.com)
STOLL, KEENON & PARK, LLP
300 West Vine St., Suite 2100
Lexington, KY 40507
Fax: (859) 253-1093
*Counsel for Lexmark Int'l, Inc.*

Joseph M. Potenza (jpotenza@bannerwitcoff.com)
Frederic M. Meeker (fmeeker@bannerwitcoff.com)
Christopher B. Roth (croth@bannerwitcoff.com)
BANNER & WITCOFF, LTD.
1001 G Street, NW, 11th Floor
Washington, DC 20001
Fax: (202) 508-9299
*Counsel for Lexmark Int'l, Inc.*

Mark T. Banner (mbanner@bannerwitcoff.com)
Christopher J. Renk (crenk@bannerwitcoff.com)
Binal J. Patel (bpatel@bannerwitcoff.com)
Jason S. Shull (jshull@bannerwitcoff.com)
Timothy C. Meece (tmeece@bannerwitcoff.com)
Matthew P. Becker (mbecker@bannerwitcoff.com)
BANNER & WITCOFF, LTD.
10 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Fax: (312) 715-1234
*Counsel for Lexmark Int'l, Inc.*

W. Andrew Copenhaver (acopenhaver@wcsr.com)
Hada V. Haulsee (hhaulsee@wcsr.com)
Mark N. Poovey (mpoovey@wcsr.com)
Donald R. Esposito, Jr. (desposito@wcsr.com)
WOMBLE CARLYLE SANDRIDGE
 AND RICE, PLLC
One West Fourth St.
Winston-Salem, NC 27101
Fax: (336) 721-3660
*Counsel for Lexmark Int'l, Inc.*

Andrew D. DeSimone
(adesimone@sturgillturner.com)
Douglas L. McSwain
(dmcswain@sturgillturner.com)
STURGILL, TURNER, BARKER
 & MOLONEY PLLC
155 E. Main St., Suite 400
Lexington, KY 40507-1317
Fax: (859) 231-0851
*Counsel for Wazana Brothers Int'l, Inc.*

A. Steven Dotan (sdotan@mdfslaw.com)
Darren S. Enenstein (denenstein@mdfslaw.com)
Ned Gelhaar (ngelhaar@mdfslaw.com)
O. Andrew Wheaton (awheaton@mdfslaw.com)
Geronimo Perez, Jr. (gperez@mdfslaw.com)
Stephen J. Rafferty (srafferty@mdfslaw.com)
MOLDO DAVIDSON FRAIOLI SEROR &
SESTANOVICH, LLP
2029 Century Park East, 21st Floor
Los Angeles, CA 90067
*Counsel for Wazana Brothers Int'l, Inc.*

Elizabeth L. Swanson
(els@elswansonlaw.com)
Swanson and Associates
9454 Wilshire boulevard
Suite 500
Beverly Hills, CA 90212
*Counsel for Wazana Brothers Int'l, Inc.*

Steven P. Bogart (sbogart@reinhartlaw.com)
Reinhart Boerner Van Deuren S.C.
1000 N. Water Street, Suite 2100
Milwaukee, WI 53202
*Counsel for Wazana Brothers Int'l, Inc.*

Joel T. Beres (jberes@stites.com)
Jack A. Wheat (jwheat@stites.com)
Jennifer L. Kovalcik (jkovalcik@stites.com)
William Charles Ferrell, Jr. (wferrell@stites.com)
STITES & HARBISON, PLLC
400 W. Market St., Suite 1800
Louisville, KY 40202
Fax: (502) 587-6391
*Counsel for Pendl Cos., Inc.*

Daniel E. Danford (ddanford@stites.com)
Elizabeth L. Thompson (ethompsonbk@stites.com)
STITES & HARBISON, PLLC
250 W. Main Street
2300 Lexington Financial Center
Lexington, KY 40507
Fax: (859) 253-9144
*Counsel for Pendl Cos., Inc.*

James R. Michels (randy.michels@stites.com)
STITES & HARBISON, PLLC
424 Church Street, Suite 1800
Nashville, TN 37219
*Counsel for Pendl Cos., Inc.*

David H. Weber (dhw@lcojlaw.com)
LIEBMAN, CONWAY, OLEJNICZAK & JERRY,
S.C.
231 Adams Street
Green Bay, WI 54305
*Counsel for Pendl Cos., Inc.*

Michael P. Foley (mfoley@rendigs.com)
RENDIGS, FRY, KIELY & DENNIS, LLP
900 Central Trust Tower
One West Fourth Street
Cincinnati, Ohio 45202-3688
*Counsel for Pendl Cos., Inc.*

Jay E. Ingle (jingle@jacksonkelly.com)
JACKSON  KELLY PLLC
175 E. Main Street
P.O. Box 2150
Lexington, KY 40588
Fax: (859) 288-2849
*Counsel for NER Data Products, Inc.*

Thomas C. O'Konski (tok@c-m.com)
Michael R. Reinemann (mreinemann@c-m.com)
CESARI & MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
Fax: (617) 951-3927
*Counsel for NER Data Products, Inc.*

Andrew C. Oatway (aco@morisi.com)
MORISI & OATWAY, P.C.
1400 Hancock St., 3rd Floor
Quincy, MA 02169
Fax: (617) 479-6885
*Counsel for NER Data Products, Inc.*

Terry J. Booth (tjb@piperschmidt.com)
Amy E. Wochos (aew@piperschmidt.com)
PIPER & SCHMIDT
Fifth Floor – Van Buren Building
733 North Van Buren Street
Milwaukee, WI 53202-4709
*Counsel for American Mutual Insurance Company*

/s/ Renée L. Grimmett, Legal Assistant
*Counsel for Static Control Components, Inc.*